There are cross-complaints in this on behalf of the Avalon American States, Mr. Keith Carlson, on behalf of the NBA, Ms. May Chan. Thank you. Mr. Carlson, you may proceed. Thank you. I think even though the cases are a long history and have been in the appellate court once, the issue before the court at the present time is rather straightforward because the parties are simplified. I think the issues are, I think, straightforward because we have the guidance of the Illinois Supreme Court on the case. We have a dispute now between two insurance companies solely. There's no insurer involved in this appeal. There was a company called CFM Construction that had a general contractor, a construction supervisor for a certain project. CFM, in this matter, never paid a penny. CFM's own insurer never paid a penny of defense costs or indemnity of any amount. We had an injury to a Mr. Flores, who was an employee of a company called International Decorators, a subcontractor, who, as the court knows from the, real briefly, for whatever reason, I think they were running into a statute of limitations problem, filed two separate tort lawsuits, which were consolidated, but alleged two different theories. American States Insurance Company insured a company called NF Construction, which had a contract for carpentry work at this project. The two lawsuits, though, alleged the identical claims against two different parties. One lawsuit alleged that CFM was the construction supervisor of the site. The other lawsuit didn't mention CFM, said NF was the construction supervisor at the project, and that their respective identical claims of negligence resulted in injuries to Mr. Flores. All these cases were consolidated for trial, but the Dunner Line case actually never went to trial. It was settled. American States did pay $200,000 at a mediation. Michigan Mutual paid $700,000. Early on, long before the settlement of the case, after their tender had been made by the insurer, Michigan Mutual, of International Decorators II, not by CFM directly, but by the insurer of International Decorators II, American States, they responded with their coverage position. They wrote letters explaining that their policy basically, in their view, had an endorsement, which only was triggered by a written contract, where the contract was a liability that was wrote out of those operations under the contract, which was a contract in this case for construction, I'm sorry, carpentry work. Why were you almost slipping your tongue there and saying supervision of the work area? Because I find that I don't always precise. My mind thinks faster than my mouth sometimes, and I apologize. There was no contract for construction. That was the claim against NF Construction, that they were involved in construction supervision. And as the court knows, plaintiffs in lawsuits frequently sue every possible party, but the plaintiff's client alleges everybody is in control, owns, supervises everybody. Obviously, every person can't supervise and own everything at all times, and that's not the case here, but the plaintiff attorney wants to bring in every possible policy, every possible party, and sue under every possible theory. And here, NF, and that's the reason why, because they knew that they, American States knew, that NF was a carpentry contractor. They weren't even present at the time that this injury happened, but they did recommend to CFM when they were looking for someone to work for them, we know a guy who's not working, here's so-and-so's name. So they used that through the underlying case to drag NF into the case. And the relevance of the allegations of the two, the distinction between what happened before the prior appeal and this appeal, is that, as the court knows, of course, it's the allegations that control the duty to defend. The allegations allege both NF was the construction supervisor and that CFM was the construction supervisor. The appellate court, assuming those were to be true, the trial court previously and the appellate court, in looking at those allegations, assuming that NF was the construction supervisor, found that the construction contract, the trial court, even though they found a very close question on the case law, said, well, I know it doesn't expressly mention construction supervision, but I think it falls within the ambient of the original contract, it's so broad, at least it's for duty to defend, it's not a question of indemnity here. So the court found that it was closer to the West American case than the United States Fire vs. Hartford case, that it interpreted this contract well within the ambient of the contract, it didn't exclude the possibility they could have done construction supervision, so the allegations alleged supervision, so therefore, I'm going to find it's a duty to defend, because that's different from the duty to identify. But what's happened here on the question of indemnification, which is not really indemnification, it's a contribution case, because there is no relationship at all, there never was a relationship between Michigan Mutual and American States, they were total strangers to each other, they weren't parties, they insured totally different entities, they only by coincidence had employees at this one construction work site who did different work, they insured CFM for liability, Michigan Mutual, for liability of rising out of the work of international decorators. And that's the classic case where the courts find that duty to defend is triggered, because the employee is found, but for his presence on the work site, the accident wouldn't have happened, and so therefore the courts find, the duty to defend analysis, that that policy is always triggered. NF was another subcontractor, and didn't insure any work of international decorators, or any liability of CFM rising out of the work of international decorators, an entirely different insurable risk, different parties, different purposes. Well, was there ever a ruling one way or the other by the trial court as to whether or not there was in fact an agreement between CFM and NF or one of its employees to supervise the premises? No. There was an agreement between them? No. There was a claim made that NF was involved in the construction supervision of, Gerald Kemp was the individual person involved who worked for CFM, CFM controlled him, there was claims made that he was also under the control of NF, because they did have a role in, the owner of NF recommended to the owner of CFM, here's a guy who's looking for a job, you know, I know him, he worked for me before, you know, he's a good guy, whatever, you can use him, or you can contact him about using him, and they did, but they didn't, they didn't have a, there was no, first of all, there was no trial, so there's no finding by the trial court that, you know, Mr. Kemp is an employee or agent of NF, that was a claim made by the plaintiff, they also made a claim that it was a CFM, they're trying to get everybody involved in the case, so. So who did Gerald Kemp actually get a paycheck from? Gerald Kemp, they did run a, invoices through NF construction, CFM paid NF and they took a little commission off that, like a temporary services, similar to a temporary services agency, and that was the factual issue that hung up summary judgment for NF construction in the case, because the factual evidence was that they didn't, CFM was the one controlling and directing Gerald Kemp, and Gerald Kemp was the one, general contractor responsible for the work, and NF didn't have any contract to do general, it wasn't paid for general contracting services. But that is the factual issue that the parties found to, as I said, preclude summary judgment for NF in the construction case, in the tort case, I'm sorry. But there was no finding that he is only the employee of this person or this, by the trial court. And no, and there's no citation of that. Again, so this case, as I said, ultimately, there was a finding by the appellate court previously, an unpublished decision, that there was a, affirming the trial court, that the contract was broad enough, the endorsement was broad enough to fall within the ambient of coverage based on the allegations of the complaint, because they're all considered to be true. And that issue of duty to defend is not an issue here. There's no issue of defense costs. Those were paid by split with American states, and there's no issue of any obligation to CFM. CFM, again, never paid anything. Summary judgment was granted as to any claim to CFM. The trial court found they didn't have any pecuniary interest in the case. Their own insurer wasn't involved in the case. They never paid anything either. There is an issue raised in these briefs about an assignment that was executed after the coverage dispute had been decided by summary judgments. And after CFM, there had already been summary judgment on the case because they had no claim. After that, there's an assignment saying, well, we want, you know, we're getting rights now to pursue you on an exclusive tender. After the underlying case is over, there's no defense cost to be incurred in the future. There's nothing left at all of any kind, and there's nothing to assign in the first place. CFM never had anything to assign. They never paid anything to assign. There's no consideration for any assignment. There couldn't be any consideration because there's no future exposure of any kind. What would have happened if CFM had given your client the nod as far as being the insurance company they wished to defend them? What would have happened then? If CFM back then had, like on John Byrne's tender? Yes. I guess that the court sort of held that the insurer has the right to choose among other insurers. There's been cases interpreted in a different fashion because they find that's the part that's bargained for in the contract. So that's usually where that's the insurer of CFM is pushing that because it affects CFM's own loss experience and ratio, whether their insurer pays anything or not. Of course, that wouldn't happen here. I mean, it might be a little different factor situation because it's just another subcontractor. I don't know why they would, but let's assume that they would. If they would, then maybe that would be an issue we might have to litigate then. Is that the purpose of John Byrne's where it's just a subcontractor? Because the court found that there was a purpose up behind it to tender to a downstream party and their insurer, so their own insurance is not impacted. That wouldn't have happened in this case because their own insurance, if they tendered to American States and exclusive Michigan Mutual, whether Michigan Mutual paid anything or not had no bearing on CFM's own loss history. Well, what I'm saying is let's reverse the roles and say that you paid off the judgment and then you went against Michigan Mutual. Would your arguments be any different than what you're making before us today? No, they wouldn't because I wouldn't be able to get equitable contribution against Michigan Mutual for liability. If I paid liability of CFM arising out of the work of NF, I wouldn't be able to get contribution for their obligation for some separate liability of CFM for a liability arising out of the work of international decorators. Why is that? Because they're a different risk. I wouldn't have paid that kind of money because they didn't have that risk. I would have gone to trial on those kind of facts because the facts would have come out that NF didn't have liability in the case. So we wouldn't have paid that. We would have gone to trial. Or, because I've done this many times in a different kind of context, you could have mediation, you could have supervision, you could agree this is the tort value of the case, but we have this legal dispute over this factual issue, mediate, arbitrate it, try that one issue. There's many possibilities you could do. Well, if you found that NF wasn't liable, would that then mean that you wouldn't be paying for CFM liability? If NF wasn't liable, right, you wouldn't have to pay for CFM's liability. Correct. Okay. If we won the case, right, if you went to trial and you won the case, you're defending a reservation of rights, but it's different defense costs. You know, you can't get those back. But the Supreme Court said unless you have a provision in your policy, they're just gone. Even if you later prevail, if there's no coverage at trial, you can't get your money back unless you have a provision in your policy for reimbursement. But then if you're defending on a reservation of rights or a declaratory or whatever that sits for the reservation, if you later prevail at trial and the court may say that, I don't know, maybe they had special derogatories, maybe they did, maybe they had certain counts that they found on, whatever, then that might prove at trial you can bring a coverage action after a verdict if you're defending on a reservation of rights and then allocate and say, no, I'm not responsible for that judgment because of this reason, because of what was found here or because of whatever it might be. If you can prove it, you have to prove it. That's why in this case they have to prove it. They have to prove equitable contribution. They have to prove the standard. Here we have skipped an entire analysis. All the case law now, all the general liability policies are other insurance clauses. It's basically if you find a duty to defend, that's the end of the analysis. It would change all the appellate court law, Supreme Court law. You find a duty to defend, skip everything else, go to other insurance clauses, and apportion any loss that way no matter who insures who, what degree of risk. Are you saying that the judgment was entered prematurely as opposed to being entered erroneously? I don't know. They didn't ask for some like a hearing to decide this allocation, some kind of allocation. I don't know if they could have. They could have done that. They could have done something different at trial. They could have brought different claims for contribution against NF construction. They could have severed that from the trial. They could have settled their case and gone after NF for their, or they believe that they overpaid something in contribution at the tort level. But this law, but what they did here, they settled a risk that they solely insured. And now after American States already paid some money before, they're now trying to say you should pay for our risk that we insured of CFM for liability arising out of our international decorators who was the employer of the tort plaintiff. Entirely different risk. You're asking someone to insure someone else's responsibility for how they run their job site, how they manage their employees, how they schedule them, how they supervise them, how they train them. An entirely different risk than American States undertook. And that's why the courts have repeatedly made it clear that it's the same risk, the same parties. It's not the same loss like a subrogational analysis. The same loss could be the home versus the race. It's broader, basically, than the same risk. I mean, counsel in their response briefing or reply, they cite a relatively recent case of Cincinnati versus American Hardware to suggest that this supported their analysis. But I believe it does not. That case talked about how the particular risk actually insured had to be covered by both policies. It doesn't have to be both identical policies, you know, word for word. In that case, they both covered claims of defamation. And they both covered the same insurers. They both covered the organization and the executive officers. And the court found that they were both primary policies covering the same people for the same risk that was at issue, the defamation, basically, but that one insurer argued were an occurrence-based policy and one argued were a claims-made policy. But it both fell within that occurrence and claim, both within both policies, which the court found was a trigger, which was different from the other analysis of whether they covered the same risk. Here, they covered different parties, different risks. The analysis in Homer's Liberty, this case, is a copy. You can just paste the names in, the same names. That case involved two different contractors. One was an employer's insurer and one was a subcontractor's insurer. All you have to do is plug in the names. If the risks are different but the loss is the same, what happens? Well, under a contribution, the risk has to be the same. If the loss is the same, because, for example, you claim there was one defamation, there's one injury. Let's say the risks are different. Both risks result in negligent liability, and there's a settlement. To say that there are different risks presumes, I think, that neither can be both applicable under the circumstances, and I don't think that is logically correct. I believe you can have different risks, and both parties who are at risk were both negligent, and it is also possible that their breach of that duty approximately caused the injury. And, therefore, regardless of whether they were different risks or the same risks or identical risks, they both would be liable in damages to someone, and if they have insurance to cover it, wouldn't the insurance company be required to cover it? Maybe as to the insured, we're talking about, though, something different. This is a remedy between insurers, not the insured. This is where the same loss. You're talking about allocating that loss that's already occurred between insurers that don't insure the insured for the same risk. They might be insured for the same loss if there was no other insurance, and you couldn't allocate it because sometimes the courts, for example, find you can't, sometimes you can, sometimes you can't, between covered and uncovered allegations. Certainly for defense costs, you can't allocate it, but for coverage, you still have to fall within a covered allegation. Even in cases where insurance has been stopped, they have to be. Your time is up, sir. Okay, thank you. Ms. Chan, is that how you pronounce it? Yes. Good morning. May it please the Court. I'd like to start with why home versus Cincinnati is distinguishable since that is the crux of the American State's argument here. The reason why home is distinguishable is because in that case, the issue of other insurance clauses and mutually repugnant access clauses was not an issue. In that case, the plaintiff insurer only had two theories as the basis of its declaratory judgment action, equitable contribution and equitable subrogation. Another distinguishing fact is that in home, the Supreme Court said that the home policy was clearly access and that the Cincinnati policy was primary. And if you look at the appellate decision, the appellate decision explains why, the reason being that the home policy had an endorsement that made its policy access. That's not what we have in this situation. In this situation, we have two policies that are co-primary. They have identical other insurance clauses. And then as the trial court found, these other insurance clauses were modified by the same types of access clauses. So we don't have a home versus Cincinnati situation. Instead, we have what the trial court found was a situation involving Ohio Casualty versus Oak Builders and State Farm versus Utica. And interestingly, those two cases came down after home versus Cincinnati. No discussion in those two cases about equitable contribution or equitable subrogation. I don't know what else might have been alleged or if anything else was alleged in the declaratory actions in those two cases. But those two cases do support the trial court's ruling that you can't, that when you have two co-primary insurers, as we have here, you do look at the other insurance clauses and the access clauses. And if they're mutually repugnant, they cancel out and the two insurers have to share. I know the American States wants to urge the court that the only thing that an insurer can, only relief an insurer can ask from for another insurer are equitable subrogation and equitable contribution. And first of all, the Supreme Court in home versus Cincinnati didn't say that. That's just, those were just the two theories alleged. And this is just not applicable where you have two co-primary insurers. What is your response to Mr. Carlson's statement regarding different risks? My response to that is that when you look at the other insurance clauses, it's interesting that insurance companies don't draft those and use the word risk in them. They use the word loss. They look at what is the loss and then decide how it should be shared. That, to me, was somewhat confusing about the home versus Cincinnati Supreme Court case because it said, well, these policies don't define risk, so we'll look at the dictionary definition of risk. I didn't read the whole policy and I didn't read the policies in the Supreme Court case, but I don't think the typical insurance policy uses the term risk in that manner. They have other insurance clauses. They use the term loss. I was asking questions of Mr. Carlson regarding whether or not the trial court made any determination or whether there was any finding regarding whether NF was actually supervising the work at the construction site. If Your Honor is referring to the underlying personal injury lawsuit, what happened was NF filed a motion for summary judgment, but that was never decided because NF settled through American States at a mediation. And we're relying on the case law where a plaintiff files a lawsuit against, for example, two defendants, it's presumed that he would have prevailed against both of them. You do not, in a coverage case, litigate that underlying case. And American States had the option of never settling the underlying case at all. They could have taken that case to trial. And we would be in a different situation here, but they did settle. And if they had won and there had been shown that there was no connection between their supervision and the loss, then would that be similar to, I think it's Bovis v. Schell or Schell v. Bovis? Does that ring a bell or not? No, not right now. Sorry. You have a cross appeal, do you not, relative to fees and interest? Yes. For that, I'd like to just stand on my brief. I just want to draw one point home is that it didn't make sense as far as the duty to defend for American States to just disregard the complaint that was filed against its own insured NF that was consolidated with the underlying plaintiff's complaint against CFM. American States acted as if the complaint against NF didn't exist. But they were consolidated and they clearly alleged NF's liability for construction supervision over the project site. And for the duty to defend, it's very clear you only have to look at the pleadings. And with these consolidated complaints, that's all American States had to look at to decide that it had a duty to defend. Now, it could have decided it had the duty to defend but reserve its rights, but it didn't do that. It just decided to disregard the complaint against NF that was consolidated. And that's where we believe the bad faith came in. Are you done? Yes. Okay. Any questions? No. Okay, thank you. Mr. Carlson? Thank you. I'm not sure what you did about disregarding NF. NF was sued, American States defended NF as a defendant in the case. The policy also provided coverage to NF for its liability. NF did file a motion for summary judgment, and the case was settled. But as counsel confirmed, there was no trial court's findings of that Mr. Kemp was an employee of NF. The basic, but like many cases, because of whatever reasons, the defense cost, exposure, the case settled. And that doesn't create a basis for equitable contribution between insurers. Instead, and this is not a case where, for example, an insured settled a claim in the face of potential liability, and the insurer sought to question the settlement later, whether it fell within or without. That's a whole other body of case law that has certain other standards in the case. This is an action solely between insurers with no contractual relationship between them. The citation to the Cincinnati and St. Farm cases, which a trial court relied upon and counsel relies upon. Why do you say that there's no contractual relationship between them? Are you talking about they are not signatories to the same contract? Right. There's no document of any kind. The same contract, the same document, the same, any agreement. That's true. They do have a common insurer, do they not? They both additionally insured CFM, that's under different risks, different language, different risks. Like different contracts. Different contracts. There's no contract between the two of them, between American States and, like there was contracts between certain parts of the construction site. There's certain contracts between certain insurers, but not between them. That's why there was no claim for identification in this matter. There's no agreement between them to base an identification upon. And here, normally, maybe I misunderstand, but why would there be identification discussed in a contract between American States, NF and CFM, if the insurance company is insuring both of them? Why would there be identification? There wouldn't be. There wouldn't need to be identification, would there? To make a claim against each other based on a written instrument, there would have to be. For identification requires a written... When you say identification, you're talking about indemnifying them against anything that the other party was liable for, but they would be liable because they're joined in several, fully liable? Well, it could be. I mean, the Supreme Court said you don't have a right to identification where you have a right to contribution, basically. So identification can arise in several different contexts. Here, of course, it's not even pled, let alone is there argued below or here or in the appellate court. So I don't know what the theory would be. I don't see any identification here because it's hard for me to address what they might have alleged with the basis for identification when they haven't pled it. I don't see it. And all I know about is the two policies which have no basis between the two of them. Well, if the policy was big enough to cover the claim, it wouldn't make any difference whether there was indemnification or otherwise. It would be your client, your insurance company would pay off the claim, would it not? I'm not sure I understand it. Mr. Flores sues CFM, Mr. Flores sues NF. Right. He makes a demand. The demand is less than the maximum coverage of your insurance policy. Okay. You pay it off. Why would there have to be any consideration of indemnification? Because both parties have been covered by the insurance policies, and both insurers come away from the transaction not owing any money. Correct? I guess that could be one result. If there was some, for example, there was some liability of NF, they could have gone to trial, for example, and found no liability. They could have reserved their rights, or had reserved their rights, and later paid nothing. Just because a demand is made against an insurer doesn't mean that there's coverage for it. If the claimant's demand is you might recover nothing against anybody. But where they chose, they chose to pay a certain amount of money on their policy to insure a certain risk at that level, and then sought to, on the basis of paying that money, knowing the law, sought to recover for their risk against another policy insuring a different risk, they have certain requirements to be met. And here they are, the same risk, the same interest. You cannot, you're asking us to now insure to pay some other risk that we never insured in the first place. Whether it could have been, if it was the same loss, a different analysis would apply, would a different analysis apply? The Supreme Court talked about a loss being different, but that is between excess and primary insurers, because by definition, excess and primary insurers don't insure the same risk, because one's above the other. So they apply a different analysis. So it all depends on what are the facts you're dealing with here. That's what the Supreme Court says. Who's trying to recover what, on what theory, on what basis, under what rights? What did you insure in the first place? Were you a primary carrier? Were you an excess carrier? Did you have a contract? Did you not have a contract? Did you have, who did you insure? Why would you, all these cases that had other insurance clauses, the state fireman, the oath, there was no question raised in the case about whether they covered the same risk. It just said they covered. Well, are you saying that an excess and a primary carrier don't cover the same risks? Yes, that's what Holmes says, correct. Well, if they don't cover the same risks, then what does that mean? That means that they can recover under, if they cover the same loss, they can recover under equitable subrogation if they're a primary, if they're saying, for example, the primary carrier, the excess carrier paid, and the primary carrier refused. Well, I was under the impression that if somebody fell off a scaffold and there was a primary insurer, and the primary insurer was insuring the insured for $100,000, and then the excess carrier insured the same general contractor for anything in excess of $100,000 up to $5 million, and the judgment was for $2 million, they would both pay, would they not? They both should pay, right. But you just told me they have different risks. They do have different risks. Then why are they paying if they have different risks? You just told me, didn't you, not the whole thing? Because you don't have to pay if you have different risks under equitable contribution. But between primary and excess, you have equitable subrogation remedy available, so you get your money back then. Of course, if they both pay, there wouldn't be a dispute. Why should you be entitled to equitable subrogation if supposedly the risks aren't the same? Because that's what the Homeowner's Liberty explained. It would be unreasonable in that context because a primary insurer, because they found that an excess is not the same risk as a primary insurer because they have different levels. That was their definition. But they gave them a remedy where there's an excess insurer under equitable subrogation. Yeah, okay. I mean, it's hard for me to argue about what the Supreme Court said. What it sounds like is that they're using the term risk differently depending on the circumstance. Well, the Court said they're not the same. I mean, the Supreme Court said the same risk and the same loss is not the same. They're the same, only different, right? Right, that's what the different theory is. They're different, only the same. That's why they said you can't get equitable subrogation between primary insurers too. Do you have any other questions? Sir, your time is up. Thank you very much. It's been very interesting.